## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NELSON RODRIGUEZ** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **No. 08-4470** |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM

**NORMA L. SHAPIRO, S.J.**                                    **MARCH 18, 2010**

Plaintiff, Nelson Rodriguez ("Rodriguez"), commenced this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Plaintiff filed a motion for summary judgment and request for review [paper no. 7]. Upon review of plaintiff's objections to the Report and Recommendation of the United States Magistrate Judge Lynne A. Sitarski, plaintiff's motion for summary judgment and request for review will be denied and judgment affirming the decision of the Commissioner will be entered in favor of defendant.

### BACKGROUND

On November 3, 2000, Rodriguez filed DIB and SSI claims alleging disability under the Act since September 5, 2000. With regard to the DIB claim, Rodriguez's earnings record showed that he had acquired sufficient quarters of coverage to remain insured through December 31, 2005. (R. at 19). The Social Security Administration ("SSA") denied his claim for benefits on January 22, 2001. On March 21, 2001, Rodriguez filed a request for a hearing before the

Administrative Law Judge ("ALJ"). ALJ Alan Sacks conducted a hearing on January 4, 2002, and denied both claims on January 9, 2002. Rodriguez timely filed a request for review of the hearing decision with the Appeals Council. On July 19, 2002, the Appeals Council remanded the matter to the ALJ for further review. ALJ Sacks held a second hearing on October 25, 2002, and denied the benefits the same day. Rodriguez again sought review by the Appeals Council.

While Rodrguez's request for review was pending before the Appeals Council, he filed a second application for DIB on January 27, 2003. In March 2003, the state agency found Rodriguez disabled as of January 10, 2002. Because of the internal discrepancy, the Appeals Council vacated the hearing results, opened the state determination, consolidated the claims, and sent the case back to another ALJ with specific instructions for remand. On April 10, 2006, ALJ Richard Kelly conducted a third hearing. On May 16, 2006, ALJ Kelly issued his opinion finding that Rodriguez was not disabled from September 2000 through the date of the decision. Rodriguez's requested review of the decision was denied by the Appeals Council on July 14, 2008. Rodriguez filed the instant action from the final decision of the Commissioner. This court referred the motion for summary judgment and request for review to Lynne A. Sitarski, United States Magistrate Judge, for a Report and Recommendation ("R&R").

Rodriguez argued: (1) the ALJ failed to credit properly the opinion of Rodriguez's treating physician, Dr. Apollo M. Arenas; (2) the ALJ failed to credit properly Rodriguez's testimony; (3) the ALJ failed to assess properly Rodriguez's residual functional capacity ("RFC"); and (4) the ALJ posed a flawed hypothetical to the vocational expert because the ALJ failed to have him consider Rodriguez's non-exertional impairment. (See Pl. Request for Review, at 3 [paper no. 7]). The Magistrate Judge found: (1) substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Arenas's opinion; (2) substantial evidence

supports the ALJ's credibility determination as to Rodriguez's testimony; (3) substantial evidence supports the ALJ's assessment of Rodriguez's lumbar condition and carpal tunnel syndrome; and (4) substantial evidence supports the ALJ's determination that Rodriguez does not suffer from any non-exertional limitations, so the ALJ did not err in failing to include non-exertional limitations in the hypothetical to the vocational expert. (See R&R, at 9-18 [paper no. 13]). Rodriguez filed Objections claiming that the Magistrate Judge and the ALJ failed to credit properly the opinion of the treating physician, Dr. Arenas. (See Pl. Objections, at 1-4 [paper no. 14]). He argued that the opinion of Dr. Arenas was entitled to substantial weight because it was well supported by medically acceptable clinical and laboratory diagnostic techniques, and was not inconsistent with other substantial evidence in the record.

**DISCUSSION**

**I. Standard of Review**

    **A. Disability Under the Social Security Act**

The court conducts de novo review of the portions of an R & R to which specific objections have been filed. See 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P.72(b). Under the Act, a claimant is disabled if unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A five-step sequential evaluation is utilized in evaluating disability claims. The Commissioner considers whether a claimant: (1) is working; (2) has a severe impairment; (3) has

an impairment that meets or equals the requirements of an impairment listed in the regulations and is considered per se disabling; (4) can return to past work; and (5) if not, can perform other work. Bembery v. Barnhart, 142 Fed. Appx. 588, 590 (3d Cir. 2005); 20 C.F.R. § 404.1520.

### B. Judicial Review of Commissioner's Final Decision

This court must accept the factual findings of the Commissioner if supported by substantial evidence and decided according to correct legal standards. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir.1986). Substantial evidence is deemed such relevant evidence as a reasonable mind might accept as adequate to support a decision. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980). The court should not re-weigh the evidence or substitute its own conclusions for those of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Despite this deference to the administrative decisions, the court retains the responsibility to scrutinize the record and remand if the Commissioner's decision is not supported by substantial evidence. See Smith v. Califano, 637 F.2d 968, 970 (3d Cir.1981). The court must consider the evidence supporting the decision in relation to all of the other evidence in the record. See Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981). If the court determines that the conclusion of the ALJ is supported by substantial evidence, it must affirm the decision, even if it would have decided the factual inquiry differently. Hartranft v Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## II. Evaluation of Evidence

Rodriguez claims the ALJ and Magistrate Judge did not give proper weight to the medical opinion of his treating physician, Dr. Arenas. The Third Circuit has acknowledged that "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34,

43 (3d Cir.2001); 20 C.F.R. § 404.1527(d)(2). The medical opinion of a claimant's treating

physician is given controlling weight on the issue of the nature and severity of a claimant's

impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."

Id. However, "a statement by a plaintiff's treating physician supporting an assertion that she is

'disabled' or 'unable to work' is not dispositive of the issue." Adorno v. Shalala, 40 F.3d 43,

47-48 (3d Cir.1994). "The ALJ must review all the medical findings and other evidence

presented in support of the attending physician's opinion of total disability," and "must weigh the

relative worth of a treating physician's report against the reports submitted by other physicians

who have examined the claimant." Id. at 48. An ALJ may reject a treating physician's opinion

outright on the basis of contradictory medical evidence. Frankenfield v. Bowen, 861 F.2d 405,

408 (3d Cir. 1988).

      In evaluating whether Rodriguez had a continuous disability as defined under the Act, the

ALJ considered all the evidence of record including the medical opinion of Dr. Arenas:

> At the outset, I note that many of claimant's complaints at hearing or in the
> file were not established by the medical evidence of record. This greatly
> undermined his credibility.
>    . . . .
> The claimant has severe back impairment from degenerative disc disease
> of the lumbosacral spine. There was a history of Mr. Rodriguez's [sic] sustaining
> work-related injuries to his lower back. The claimant was treated by a board-
> certified neurosurgeon, Saeid Alemo, M.D., for his back pain complaints (Exhibit
> 10F). Notably, Dr. Alemo indicated the claimant was able to walk six blocks. He
> noted a MRI study was significant only for bulging discs. Dr. Alemo noted an
> EMG/NCV study was performed but he did not have the results (it was normal
> with no evidence of radiculopathy in the right lower extremity - Exhibit 20F).
> Ranges of motion of the lumbosacral spine were limited, but straight leg raising
> was negative at 90 degrees. Sensory and reflexes examinations were normal.
> There were no neurological deficits. Dr. Alemo found no evidence of nerve root
> compression.
>    . . . .

After reviewing the medical evidence of record and listening to the claimant's testimony, the medical expert, Dr. Nelson, testified that the record showed minimal degenerative disease (or arthritic disease in the spine) in the X-rays of November 18, 1999. On March 29, 2000, Dr. Mandel performed a neurological examination, which showed no neurological signs. An April 12, 2000 MRI study showed spondylosis or arthritic spurring in a number of areas and an extrusion of disc material, herniated discs, and there were mechanic problems of the spine along with spondylitic spurs at L2 to S1. On May 16, 2000, the claimant was released to his job as a housekeeper at a hotel and could lift a maximum of 40 pounds. Dr. Mandel reported his opinion on July 6, 2000 that the back strain has resolved. Dr. Arenas stated the claimant received two (epidural) injections and the diagnosis on October 23, 2000 was multiple herniated discs. There were two back injuries from lifting incidents. The EMG/NCV study of the lower extremities of February 27, 2001 was normal. In June 27, 2001, Dr. Mandel, an orthopedist, released the claimant to work in a light-duty capacity. Dr. Alemo, a neurosurgeon, performed an exam on October 10, 2001. Although there were no neurological problems, he had facet arthropathy and degenerative discs. Neurological exams by Dr. Arenas showed some slight positive findings on November 7, 2001 (described as scattered and mild findings related to the diabetes). Dr. Nelson saw one elevated glucose reading in the file at 154 of December 31, 2001. A May 4, 2002 MRI study showed four annular tears. Apparently, the claimant re-injured his back in two other acidents in June 2002 and September 2004. The last neurological exam by Dr. Arenas of December 8, 2005 revealed some (soft) neurological signs. There was no additional EMG/NCV study performed to confirm radiculopathy or neuropathy. Dr. Nelson evaluated the claimant's syndrome under Listing 11.14 and his degree of carpal tunnel did not meet the severity criteria. The doctor also evaluated Listing 1.02A. However, there is not enough evidence to confirm peripheral neuropathy or carpal tunnel syndrome. Dr. Nelson did not disagree with Dr. Mandel's assessment for light-duty work.

. . . .

After considering the evidence of the record, I find that some of the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, frequency and limiting effects of these symptoms are not entirely credible and would still be compatible with an ability to perform sedentary work. The medical evidence, including the physical findings and objective testing, supports a conclusion that the claimant can perform at the sedentary level of exertion.

. . . .

As for the opinion evidence, there were many opinions about the claimant's residual functional capacity and his ability to return to work in the file. A board-certified orthopedic surgeon, Richard J. Mandel, M.D., performed an exam on June 27, 2001 (Exhibit 13F, pages 50-53). Dr. Mandel had previously treated Mr. Rodriguez for a work-related injury from 1999-2000. Dr. Mandel

opined the claimant should return to work of a light-duty nature given his underlying degenerative disease. Essentially, Dr. Mandel's opinion of light-duty work is consistent with a residual functional capacity for sedentary work.

As stated above, Dr. Alemo noted the claimant was able to walk six blocks as of October 10, 2001 (Exhibit 10F). Importantly, Dr. Alemo found no evidence of nerve root compression and the EMG/NCV study was normal. Dr. Alemo did not provide his opinion about whether the claimant could perform work-related activities (other than mentioning he could walk six blocks).

One of the claimant's treating orthopedists, Larry S. Kramer, D.O., initially released the claimant to full-duty work with no restrictions as of November 29, 1999 (Exhibit 7F, page 9). A Residual Functional Capacity Questionnaire (Physical) of September 21, 2000 by Dr. Kramer reported a residual functional capacity for less than sedentary work.

A treating neurologist, Apollo M. Arenas, M.D., completed a Medical Source Statement on January 7, 2002, which also indicated a residual functional capacity for less than sedentary work (Exhibit AC-1). He also indicated in a letter of March 7, 2002, that in his opinion, the claimant was totally disabled because of his condition. Dr. Arenas also filled out a Physical Residual Functional Capacity Questionnaire, but the date was not legible (Exhibit 21F). In any event, it also restricted the claimant to a less than full range of sedentary work.

In his prior decisions, Judge Sacks noted that Dr. Kramer qualified as a treating source. However, his opinion failed the controlling criteria because it was not well-supported and substantial evidence contradicted it. To briefly reiterate, the opinion was given only two weeks after the alleged onset date. He had diagnosed only lumbar sprain and strain, a condition that usually does not last 12 continuous months as required for disability. Dr. Kramer, only found reduced ranges of motion and spasm on exam. His own subsequent treatment notes provide no support for his conclusion. Judge Sacks rejected Dr. Kramer's opinion.

As for the opinions of Dr. Arenas, Judge Sacks found his opinion of disability too remote to deserve consideration based on an older date of 1987 on the form in question. At the October 25, 2002 hearing, counsel stated the correct date was 2001. Nonetheless, Judge Sacks gave the opinion no weight. It was a blanket statement unsupported by any explanation or reference to any examination results. The 2001 statement by Dr. Arenas was inconsistent with the evidence.

Further, Judge Sacks found the March 2002 statement by Dr. Arenas suffered from similar faults. Dr. Arenas offered no statement of reasons in support of his opinion other than to relate the claimant's allegations of pain, which Judge Sacks found less than entirely credible, and check boxes on a form. The assessment by Dr. Arenas of the claimant's ability to perform work-related activities was inconsistent with the claimant's own description of these abilities. In any case, such issues are reserved to the Commissioner of the Social Security Administration.

In reviewing the opinions by Drs. Arenas and Kramer, I find the analysis of these opinions was full and adequate by Judge Sacks in the prior decisions, and

I adopt these findings. Judge Sacks pointed out many of the claimant's inconsistent symptoms with the reported objective (and subjective) findings by Dr. Mandel. The Judge also referred to elements of symptom embellishment on exam found by Dr. Mandel. I find that in weighing the conflicting opinions from the physicians in this case, I am more persuaded by the opinion by Dr. Mandel, which Dr. Nelson agreed seemed reasonable. That is, the claimant can perform at the sedentary level of exertion.

I have also considered the administrative findings of fact made by the State agency disability examiner and State agency medical physician, who assessed a residual functional capacity at the light level of exertion (Exhibit 9F). These opinions are weighed as statements from nonexamining expert sources. Although the opinon is a reasonable assessment, I find that after my independent review of the medical evidence and considering the claimant's allegations in view of his diagnoses and treatment, I am more persuaded the claimant retains a residual functional capacity for sedentary work. In any event, the evidence in the file is sufficient and appropriate to make a determination that the claimant is not disabled when considering the application of Medical-Vocational Rules 201.19 and 201.26.

(R. at 21-26) (footnotes omitted). The ALJ opinion displays a thorough familiarity with the

medical evidence of record. The ALJ considered Dr. Arenas's opinion and explained that it

would adopt the findings of ALJ Sacks from the prior decisions. ALJ Sacks considered the

opinion of Dr. Arenas in the second ALJ decision dated 10/25/02. ALJ Sacks found: (1) the new

MRI and Dr. Arenas's findings since January 2002 did not substantially affect his assessment

because they failed to explain the inconsistencies in claimant's reported pain and the objective

test findings, (R. at 119); (2) claimant's reduction in right leg strength was questionable because

Dr. Arenas failed to explain whether claimant continued to give less than full effort when testing,

(R. at 120); (3) Dr. Arenas's January 2001 statement of disability "[was] a blanket statement

unsupported by any explanation or reference to any examination results" and was "inconsistent

with the evidence, which establishe[d] that the claimant's allegations [were] exaggerated and

unreliable," (R. at 123); (4) Dr. Arenas's March 2002 statement of disability offered no statement

of reasons in support of the opinion other than claimant's allegations of pain, which were

suspect, (R. at 123); and (5) Dr. Arenas's assessment of the claimant's ability to perform work-related activities was inconsistent with claimant's own description of those abilities, (R. at 123). The ALJ's decision to adopt ALJ Sacks's findings is reasonable in light of the evidence presented and his assessment of the adequacy of the prior decision.

Rodriguez argues that Dr. Arenas's opinion should be fully credited because his treatment notes were part of the record and provide sufficient support. Even if Dr. Arenas's opinion was fully supported by objective evidence, the ALJ could still consider the conflicting opinions of Dr. Alemo, Dr. Mandel, and Dr. Newton. (R. at 254-55, 323-26, 521-38). Dr. Alemo and Dr. Mandel independently examined Rodriguez on multiple occasions. Dr. Newton reviewed and analyzed Rodriguez's entire medical file. None of these physicians concurred that Rodriguez was under a total disability. Dr. Alemo reported bulging discs at L2-L3 and L4-L5, slight impairments in the patient's range of motion, and normal results for the other assessments. He noted that the patient is not in acute distress, could walk six blocks, and is suffering from either facet arthropathy or degenerative disc disease (R. at 254). Dr. Mandel reported a past finding of bulging discs and degenerative disc disease. He opined that Rodriguez sustained a lumbar strain and sprain on September 5, 2000, but at the time of the examination he was fully recovered from that injury. Dr. Mandel could not point to any objective evidence of ongoing injury, and instead found elements of embellishment. It was Dr. Mandel's opinion that Rodriguez should return to work of a light duty nature. (R. at 326). Dr. Newton, the medical expert at the April 10, 2006 hearing, reviewed the full medical file and concurred that light duty would be good for Rodriguez and that he would be able to do it. (R. at 538). Based on this contradictory medical evidence, the ALJ could have reasonably rejected the conclusions of the treating physician. Accordingly,

having considered the entirety of the record, including the noted credibility issues, the ALJ's decision to discount the opinion of Dr. Arenas is supported by substantial evidence.

**CONCLUSION**

There was substantial evidence to support the ALJ decision determining Rodriguez was not disabled. Therefore, after consideration of Rodriguez's objections, the Report and Recommendation will be approved. An appropriate order follows.